**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) | Case No. 1:14-cv-03121 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AEP ENERGY, INC., | ) | Hon. Judge James B. Zagel |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................................1

II.   NATURE OF THE CASE .......................................................................................2

III.  THE PROPOSED SETTLEMENT ........................................................................3

      A.    The Settlement Class...................................................................................3

      B.    Settlement Relief .........................................................................................4

            1.    Class Member Relief:  Settlement Fund ..........................................4

            2.    Class Representative Incentive Award .............................................5

            3.    Attorneys' Fees and Costs ................................................................5

            4.    Remaining Funds ..............................................................................5

      C.    Notice and Settlement Administration........................................................6

      D.    Opt-Out and Objection Procedures.............................................................6

      E.    Release ........................................................................................................7

IV.   ARGUMENT ..........................................................................................................7

      A.    The Settlement Approval Process................................................................7

      B.    The Settlement Merits Preliminary Approval.............................................9

            1.    The Proposed Settlement Provides Substantial Relief to the Settlement
                  Class Particularly in Light of the Uncertainty of Prevailing on the Merits. 9

                  a.    Benefits to the Class...............................................................9

                  b.    The Strength of Plaintiff's Case............................................10

            2.    Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive. 12

            3.    The Settlement Resulted from Extensive, Arm's-Length Negotiations and
                  Is Not the Result of Collusion......................................................12

            4.    The Stage of the Proceedings and the Amount of Discovery Completed
                  Supports Preliminary Approval. ...................................................13

i

C.      Plaintiff's Requested Fees Are Reasonable. ...........................................................14

D.      The Requested Incentive Award Is Reasonable......................................................14

E.      The Proposed Class Notice Satisfies Due Process.................................................15

F.      The Court Should Grant Class Certification for Settlement Purposes..................17

      1.      The Rule 23(a) Factors Are Met. ...............................................................17

            a.      The Class Is Sufficiently Numerous and Joinder Is Impracticable.......................................................................................17

            b.      The Settlement Class Shares Many Common Issues of Law and Fact................................................................................................18

            c.      Plaintiff's Claims Are Typical of the Settlement Class. ................19

            d.      Plaintiff and His Counsel Are Adequate Representatives. ............19

      2.      The Rule 23(b)(3) Factors Are Satisfied.....................................................20

G.      Scheduling a Final Approval Hearing Is Appropriate. ..........................................21

V.      CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
   No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) .............................................11

*Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.*,
   Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)...................8, 13

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................................20

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
   —— U.S. ——, 133 S.Ct. 1184 (2013)...............................................................................20

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir.1980) ....................................................................7, 8, 9, 10

*Bridgeview Heath Care Ctr. Ltd. v. Clark*,
   No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011).........................................18

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ...........................................................................................20

*Carnegie v. Household Int'l., Inc.*,
   376 F.3d 656 (7th Cir. 2004) ...........................................................................................20

*Chapman v. First Index, Inc.*, No.
   9 C 5555, 2014 WL 840565 (N.D. Ill. March 4, 2014) ....................................................11

*Cook v. Niedert*,
   132 F.3d 1004 (7th Cir. 1998) ..........................................................................................15

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ..............................................................................................8

*Ferrington v. McAfee, Inc.*,
   2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ......................................................................4

*Forcellati v. Hyland's, Inc.*,
   No. 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................................................4

*F.C.V., Inc. v. Sterling Nat'l. Bank*,
   652 F. Supp. 2d 928 (N.D. Ill. 2009) ..........................................................................16, 17

*Gammon v. GC Servs. Ltd. P'ship.,*
    162 F.R.D. 313 (N.D. Ill. 1995).....................................................................................19

*G.M. Sign, Inc. v. Brinks Mfg. Co.,*
    No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011).....................................11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
    270 F.R.D. 330 (N.D. Ill. 2010)........................................................................................9

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ............................................................................................14

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ..............................................................................................8

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago,*
    834 F. 2d 677 (7th Cir. 1987) ...........................................................................................12

*McCabe v. Crawford & Co.,*
    210 F.R.D. 631 (N.D. Ill. 2002).........................................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306, 70 S.Ct. 652 (1950)....................................................................................15

*Parker v. Risk Mgmt. Alts., Inc.,*
    206 F.R.D. 211 (N.D. Ill. 2002).........................................................................................19

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) ............................................................................................14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985).........................................................................................................16

*Phillips Randolph Enters., LLC v. Rice Fields,*
    No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) .............................................12

*Phipps v. Sheriff of Cook Cnty.,*
    249 F.R.D. 298 (N.D. Ill. 2008).........................................................................................19

*Randolph v. Crown Asset Mgmt., LLC,*
    254 F.R.D. 513 (N.D. Ill. 2008).........................................................................................18

*Reliable Money Order, Inc., v McKnight Sales Co., Inc.,*
    218 F.R.D. 327 (E.D. Wis. 2012) ......................................................................................18

*Sadowski v. Med1 Online, LLC,*

No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ...........................................20

*Savanna Group, Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)...............................................11

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................................12

*Sledge v. Sands*,
182 F.R.D. 255 (N.D. Ill. 1998)......................................................................................19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .......................................................................................1, 9

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
309 F.3d 978 (7th Cir. 2002) .........................................................................................19

## FEDERAL STATUTES AND REGULATIONS

47 C.F.R. § 64.1200(a)(1)(iii) ................................................................................................2

47 C.F.R. § 64.1200(c)(2) ......................................................................................................2

47 U.S.C. § 227 .....................................................................................................................2

47 U.S.C. § 227(c)(5)............................................................................................................10

## FEDERAL RULES

Fed. R. Civ. P. 23(a)(4).......................................................................................................19
Fed. R. Civ. P. 23(e)(1).......................................................................................................15
Fed. R. Civ. P. 23(e)(2)..........................................................................................................8

## OTHER AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002)..............8

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11:42 (4th ed. 2002)............12

*Manual for Complex Litigation* § 21.312 (4th ed. 2004)..................................................15

*Manual for Complex Litigation* § 21.62 (4th ed. 2004)...................................................15

*Manual for Complex Litigation* § 21.633 (4th ed. 2004).................................................9

## I.   INTRODUCTION

After nearly a year of litigation, discovery, numerous arm's-length negotiations between counsel, and a mediation before an experienced, third-party neutral, Plaintiff Philip Charvat and Defendant AEP Energy, Inc. ("AEP Energy") have reached a class action settlement of this matter. The Settlement[1] includes the establishment of a $6,000,000 common fund, to be distributed to Settlement Class Members who submit Approved Claims, after payment of notice and administration costs, class counsel fees, and an incentive award to Plaintiff. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery, an online media campaign, and a website through which Claim Forms may be directly submitted.

In evaluating the fairness of a proposed class action settlement, the key consideration is the strength of the Plaintiff's case on the merits balanced against the amount offered in the Settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Although Plaintiff here believes that he would secure class certification and ultimately prevail on the merits at trial, success is not assured. At every turn of the litigation and in negotiations, AEP Energy has denied liability and vigorously defended its position. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation centered on questions of whether a class should be certified and whether AEP Energy is liable for the allegedly unlawful calls challenged in this action.

The relief provided here—cash payments from a Settlement Fund—meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement dated as of April 21, 2015 ("Agr.), attached as <u>Exhibit A</u>.

preliminary approval of the Settlement, (2) provisionally certify the proposed Settlement Class;
(3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the
Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and
(6) schedule the Final Approval Hearing and related dates as proposed.

## II.   NATURE OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a
telephone subscriber who has registered his or her telephone number on the National Do Not
Call Registry, or calling a cell phone using an automatic telephone dialing system or an artificial
or prerecorded voice. *See* 47 C.F.R. § 64.1200(c)(2); § 64.1200(a)(1)(iii).  In his complaint,
Plaintiff alleges that AEP Energy violated the TCPA by causing multiple telemarketing calls to
be made to phone numbers Plaintiff and others had registered with the National Do Not Call
Registry.  (Compl. ¶ 48.)  AEP Energy denies that it violated the TCPA, and denies all other
allegations of wrongdoing and liability.  (*See* Agr. at Recitals ¶ E.)

Plaintiff thoroughly investigated the facts and law underlying the claims asserted in this
action, and engaged in comprehensive discovery.  (*See* Burke Decl. ¶ 12, attached as Exhibit B.)
Plaintiff requested and AEP Energy produced data and documents regarding Plaintiff and the
class' claims, and—from the business records of Infinity Energy Solutions, which made calls
allegedly on behalf of AEP Energy—the Parties have determined, for purposes of settlement,
that there were approximately one (1) million members of the Settlement Class.  (Burke Decl. ¶
12.)

In addition to numerous informal discussions between counsel, the Parties participated in
a formal mediation session before the Honorable Morton Denlow (Ret.) of JAMS on October 28,

2

2014.  (Agr. at Recitals ¶ C; Burke Decl. ¶ 13.)  In connection with the mediation, the Parties

submitted detailed mediation briefs to Judge Denlow, setting forth their respective views on the

strengths of their cases.  (Burke Decl. ¶ 13.)  During the mediation, the Parties discussed their

relative views of the law and the facts and potential relief for the proposed class, but were

ultimately unsuccessful at reaching a settlement.  (Agr. at Recitals ¶ C; Burke Decl. ¶ 13.)

Nonetheless, with Judge Denlow's assistance and continued negotiations, an agreement in

principle was eventually reached, culminating in the Settlement Agreement now before the

Court.  (Agr. at Recitals ¶ D; Burke Decl. ¶ 13.)  At all times, the Parties' settlement negotiations

were adversarial, non-collusive, and at arm's-length.  (Burke Decl. ¶ 13.)  These discussions

culminated in the Settlement Agreement.

### III.  THE PROPOSED SETTLEMENT

#### A.      The Settlement Class

The proposed Settlement would establish a "Settlement Class" for settlement purposes

only, defined as:

> All Persons within the United States to whom, between April 29, 2010 and April
> 21, 2015: (a) more than one telephone solicitation was allegedly initiated or made
> by or on behalf of any of the Released Parties within any twelve-month period to
> such Person's telephone number that, at the time of the calls, was listed on the
> National Do Not Call Registry; and/or (b) a call was allegedly initiated or made
> by or on behalf of any of the Released Parties to such Person's wireless telephone
> number.
>
> The following Persons are excluded from the Settlement Class: AEP Energy, any
> parent, subsidiary, or affiliate of AEP Energy, the officers, directors, agents,
> servants, or employees of any of the foregoing as of the entry of the Preliminary
> Approval Order, Class Counsel, the Settlement Administrator, the Mediator, and
> any judge presiding over the Action.

(Agr. ¶ 1.25.)  The records of Infinity Energy Solutions contain approximately one (1) million

unique telephone numbers attributable to Settlement Class Members. (Burke Decl. ¶ 12.)

3

**B.     Settlement Relief**

1.     <u>Class Member Relief:  Settlement Fund</u>

The proposed Settlement establishes a non-reversionary $6,000,000 Settlement Fund,

which will be used to pay: (1) cash settlement awards to eligible Settlement Class Members;

(2) Settlement Administration Expenses (estimated at no more than $1,000,000); (3) court-

approved attorney's fees and costs of up to $2,000,000; and (4) a court-approved incentive award

to the Class Representative of up to $12,500.  (Agr. ¶¶ 2.1-2.2, 8.1, 8.3.)

Each Settlement Class Member who submits an Approved Claim will receive a *pro rata*

share of the Settlement Fund after the deduction of the amount for Settlement Administration

Expenses, attorneys' fees and costs to Class Counsel, and any incentive award.  (Agr. ¶ 2.2.)

Because the amount Settlement Class Members will receive depends upon the number of

Approved Claims, the final cost of Settlement Administration Expenses, and the amounts of any

incentive award and Fee Award, the amount Settlement Class Members will eventually receive

cannot currently be determined with any measure of precision.  However, if one assumes that

5%[2] of Settlement Class Members submit valid claims and that the Court awards the requested

incentive and Fee Awards, each Settlement Class Member could be expected to receive

approximately $60.[3]  The Settlement places no cap on individual Settlement Class Member

recoveries, and, in fact, provides for a further *pro rata* distribution of any amount remaining

---

[2] *See Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("'[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'") (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)).
[3] ($6,000,000 Settlement Fund – $1,000,000 estimated Settlement Administration Expenses – $2,000,000 requested Fee Award – $12,500 requested Class Representative award) ÷ (1,000,000 approximate Settlement Class Members x 0.05) = $59.75.

amount remaining in uncashed settlement distribution checks, to the extent administratively feasible.[4] (Agr. ¶ 2.2.)

### 2. Class Representative Incentive Award

If approved by the Court, Plaintiff will receive an incentive award of $12,500 from the Settlement Fund, in lieu of any payments on claims to which he might otherwise be entitled as a Settlement Class Member under the Settlement. (Agr. ¶ 8.3.) This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

### 3. Attorneys' Fees and Costs

Before the hearing on final approval of the settlement, Class Counsel will apply to the Court for an award of attorneys' fees and costs in the amount of $2,000,000. (Agr. ¶ 8.1.) As Class Counsel will address in their fee application, an award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Approved Claims, Settlement Administration Expenses, and any Fee Award and incentive award will be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 2.2(c).) The Parties propose the Ohio Bar Foundation. (*Id.*) This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible. (*Id.*)

---

[4] If distribution of any amounts remaining from uncashed checks is administratively infeasible—*i.e.*, Settlement Class Members would receive less than an additional $1.00, after administrative costs—then that amount will instead be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 2.2.) The Parties propose the Ohio Bar Foundation as the designated *cy pres* recipient. (Agr. ¶ 2.2.)

### C. Notice and Settlement Administration

All Settlement Administration Expenses will be paid from the Settlement Fund. (Agr. ¶ 1.23.) The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm Kurtzman Carson Consultants LLC ("KCC") to be the Settlement Administrator (Agr. ¶ 1.24), and to implement the Notice Plan and administer the Settlement, subject to review by counsel. The Settlement Administrator's duties will include: (1) sending Notice to the Settlement Class pursuant to the Notice Plan; (2) responding to inquiries regarding the claims process from persons in the Settlement Class; (3) approving or rejecting claims; and (4) issuing settlement payments. (Agr. ¶¶ 4.1-4.2, § 5.)

The Settlement Administrator will send direct postcard notice via the U.S. Postal Service—substantially in the form attached as Exhibit 3 to the Settlement Agreement—to the names and addresses of Settlement Class Members identified through the call logs of Infinity Energy Solutions, which made calls allegedly on behalf of AEP Energy. (Agr. ¶ 4.2(a).) The Settlement Administrator also will administer a Settlement Website, substantially in the form of Exhibit 4 to the Settlement Agreement, through which Settlement Class Members will be able to submit Claim Forms online and obtain further details and information about the Settlement, including reviewing the Parties' Stipulation of Settlement. (Agr. ¶¶ 1.29; 4.2(c).) Notice will be further bolstered through an online media notice campaign directing consumers to the Settlement Website. (Agr. ¶ 4.2(b).)

### D. Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval. (Agr. ¶¶ 4.3-4.4.) The procedures and deadlines for filing opt-out requests and objections will be conspicuously listed in the Notices and on the Settlement

Website.  (*See* Agr. at Exs. 3-4.)  With regard to objections, the Notice informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing.  (*Id.*)  The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out right.  (*Id.*)

### E. Release

The release is appropriately tailored to this case involving alleged violations of the TCPA.  In exchange for settlement benefits, Plaintiff and all Settlement Class Members who do not timely opt out of the Settlement will release AEP Energy and its present, former, and future predecessors, successors, assigns, parents, subsidiaries, and affiliates—and their respective employees, agents, representatives, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, and auditors—from any and all claims against the Released Parties, or any of them, arising out of or relating to the act of initiating or making calls, by or on behalf of any of the Released Parties, to: (a) telephone numbers that were listed on the national Do Not Call registry and/or (b) wireless telephone numbers. The Released Claims include any and all claims that were brought or could have been brought in the Action. (Agr. ¶¶ 1.19-1.21; § 3.)

### IV. ARGUMENT

### A. The Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the

class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings.*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls "within a range of possible approval" and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* If the Court preliminarily approves the class

action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc.*, 463 F.3d at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth in the following, the settlement here warrants preliminary approval so that persons in the Settlement Class can be notified of the settlement and provided an opportunity to voice approval or opposition.

**B.    The Settlement Merits Preliminary Approval**

1.    The Proposed Settlement Provides Substantial Relief to the Settlement Class Particularly in Light of the Uncertainty of Prevailing on the Merits.

a.    *Benefits to the Class*

"The most important factor relevant to the fairness of a class action settlement is the first one on the list: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc.*, 463 F.3d at 653. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

9

The Settlement Agreement requires AEP Energy to pay $6,000,000 into a fund out of which eligible claimants will receive a cash payment. (Agr. ¶ 2.1.) Although the precise amount of each Settlement Class Member's award cannot be determined until all claims have been submitted, Plaintiff estimates, based on similar TCPA class actions as set forth above, awards of approximately $60 after deductions for Settlement Administration Expenses, Court-approved attorneys' fees and costs, and any Court-approved incentive award.

Plaintiff acknowledges that the $6,000,000 Settlement Fund does not constitute the full measure of damages potentially available to Settlement Class Members, who theoretically could recover up to $500 or $1,500 in statutory damages for each violation of the TCPA if they were to prevail in litigation, less fees and costs. *See* 47 U.S.C. § 227(c)(5) (permitting up to $500 in statutory damages for each TCPA violation, or up to $1,500 for "willful" violations). This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

b.   *The Strength of Plaintiff's Case*

Plaintiff continues to believe that his claims against AEP Energy have merit, and that he could make a compelling case if his claims were tried. Nevertheless, Plaintiff's claims would face a number of difficult challenges if the litigation were to continue.

Apart from the numerous affirmative defenses asserted in its Answer (Dkt. No. 13 at 13-14), AEP Energy has consistently argued in negotiations that class certification is not appropriate because individualized questions will predominate at trial, including questions relating to

whether it was a class member, or a previous subscriber, who registered a number on the Do-Not-Call registry. These arguments are analogous to assertions of individualized issues of consent, which often are raised by defendants in TCPA class actions. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue. On the other hand, in *G.M. Sign, Inc. v. Brinks Mfg. Co.*, No. 09-5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If AEP Energy were able to present convincing facts to support its position that individualized issues predominate, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiff to pursue his individual claims.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there is a risk of losing a jury trial. And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal. By contrast, the Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

        2.      <u>Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive.</u>

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have commenced both formal and informal discovery, extensive motion work, including motions for class certification and summary judgment, remain. The Parties also likely will need to retain experts to analyze the applicable call data. Realistically, it could be a year before the case would proceed to trial. The appeals process may further delay any judgment in favor of Settlement Class Members. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

        3.      <u>The Settlement Resulted from Extensive, Arm's-Length Negotiations and Is Not the Result of Collusion.</u>

The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the

result of arm's-length negotiations.  Newberg, *supra*, § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at \*10.

Here, the proposed settlement was negotiated over the course of several months, and only effectuated after a formal mediation, discovery, and significant back-and-forth between the Parties.  (Burke Decl. ¶¶ 12-13.)  Plaintiff's counsel are particularly experienced in the litigation of nationwide class action cases, particularly under the TCPA.  (*See* Burke Decl. ¶¶ 2-11; McCue Decl. ¶¶ 2-11; Paronich Decl. ¶¶ 2-6.)  In negotiating this Settlement, putative Class Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular.  *Id*.  An experienced mediator, the Honorable Morton Denlow (Ret.) of JAMS, participated actively throughout the negotiation process.  (Burke Decl. ¶ 13.)  The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles is a testament to the non-collusive nature of the Settlement.

4.  The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval.

The Parties have engaged in substantial, substantive discovery, permitting a thorough analysis of the factual and legal issues involved in this matter.  (Burke Decl. ¶ 12.)  Settlement negotiations have been prolonged and hard-fought, spanning the course of several months. Before the mediation, the Parties provided Judge Denlow with extensive written analyses of the factual and legal issues involved with the case.  (Burke Decl. ¶ 13.)  As negotiations progressed, the Parties provided Judge Denlow with updates and additional analyses.  (Burke Decl. ¶ 13.) Counsel's thorough legal and factual analyses—including based on substantial confirmatory discovery and the use of a consulting expert—informed the Settlement.  (Burke Decl. ¶ 13.)

13

### C.   Plaintiff's Requested Fees Are Reasonable.

Putative Class Counsel seek an award not to exceed $2,000,000 to compensate counsel for reasonable fees and costs associated with this action.  (Agr. ¶ 8.1.)  The requested fee, which was negotiated only after the substantive terms of the Settlement Agreement were reached, is reasonable under the circumstances of this case.  In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).

Putative Class Counsel have achieved an excellent result for the Settlement Class.  The Settlement creates a non-reversionary Settlement Fund of $6,000,000, affording Settlement Class Members direct monetary relief.  Further, although putative Class Counsel were confident in the ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering AEP Energy's substantial opposition and the complexity of the issues involved.  Because putative Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, counsel faced substantial risk.  Finally, the fee is in line with those deemed reasonable in the Seventh Circuit.  *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

Prior to final approval, putative Class Counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

### D.   The Requested Incentive Award Is Reasonable.

Incentive awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the

settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Such awards are generally proportional to the representative's losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff's requested incentive award of not more than $12,500 is appropriate. Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of the Class Representative's efforts without taking any personal action, Plaintiff exposed himself to AEP Energy's investigation, committed himself to all the rigors of litigation in the event the case did not settle, and subjected himself to all the obligations of a named party.

### E. The Proposed Class Notice Satisfies Due Process.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litig., *supra*, at § 21.312. The best practicable notice is that which "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

15

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed Notice, attached as Exhibits 3-4 to the Settlement Agreement, satisfies all of the above criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice therefore satisfies the requirements of Rule 23. *See F.C.V., Inc. v. Sterling Nat'l. Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining that a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via U.S. Mail to the approximately one million names and addresses contained in call logs produced in response to Plaintiff's subpoena to Infinity Energy Solutions, in reference to the Settlement Class. (Agr. ¶ 4.2(a); Burke Decl. ¶ 12.) To supplement this postcard notice, the Settlement Agreement provides for the creation of a Settlement Website where Settlement Class Members may obtain additional relevant information about the Settlement and submit Claim Forms online, which itself will be further supported by an online media notice campaign. (Agr. ¶ 4.2(b)-(c).)

This Notice Plan satisfies due process, especially because Rule 23 does not require that each potential class member receive actual notice of the class action. A court must simply make certain that class members receive "the best practicable notice that is: 'reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections.'" *F.C.V., Inc.*, 652 F. Supp. 2d at 944 (Rule

23(b)(3) class) (quoting *Shutts*, 472 U.S. at 808).

All in, the Notice Plan constitutes the best notice practicable under the circumstances,

provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of

due process and Federal Rule of Civil Procedure 23.

### F. The Court Should Grant Class Certification for Settlement Purposes.

For settlement purposes only, Plaintiff respectfully requests that the Court provisionally

certify the Settlement Class defined as:

> All Persons within the United States to whom, between April 29, 2010 and April
> 21, 2015: (a) more than one telephone solicitation was allegedly initiated or made
> by or on behalf of any of the Released Parties within any twelve-month period to
> such Person's telephone number that, at the time of the calls, was listed on the
> National Do Not Call Registry; and/or (b) a call was allegedly initiated or made
> by or on behalf of any of the Released Parties to such Person's wireless telephone
> number.
>
> The following Persons are excluded from the Settlement Class: AEP Energy, any
> parent, subsidiary, or affiliate of AEP Energy, the officers, directors, agents,
> servants, or employees of any of the foregoing as of the entry of the Preliminary
> Approval Order, Class Counsel, the Settlement Administrator, the Mediator, and
> any judge presiding over the Action.

(*See* Agr. ¶ 1.25.)  As detailed below, the Settlement Class meets all of the applicable

certification requirements.

#### 1. The Rule 23(a) Factors Are Met.

##### a. *The Class Is Sufficiently Numerous and Joinder Is Impracticable.*

"Although there is no bright line test for numerosity, a class of forty is generally

sufficient to satisfy Rule 23(a)(1)." *See, e.g.*, *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643

(N.D. Ill. 2002) (citations and internal marks omitted).  Here, the Parties have identified

approximately one (1) million unique numbers called attributable to persons in the Settlement

Class. (Burke Decl. ¶ 12.) The large number of Settlement Class Members, coupled with their geographic disbursal throughout the country, renders joinder impracticable. *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) (joining hundreds of claims impracticable where claimants are "widely scattered" and the amount in controversy is small).

b.     *The Settlement Class Shares Many Common Issues of Law and Fact.*

The commonality requirement of Rule 23(a)(2) is satisfied because there are many questions of law and fact common to the Settlement Class that focus on AEP Energy's allegedly common practice of causing calls to be made to numbers in violation of the TCPA. *See Reliable Money Order, Inc., v McKnight Sales Co.*, 218 F.R.D. 327, 332-33 (E.D. Wis. 2012) (finding commonality requirement satisfied where class members all alleged they received faxes in violation of the TCPA and the events surrounding the transmission of each fax were identical); *Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (finding commonality satisfied in TCPA class where the same evidence concerning the defendant's advertising campaign applied to plaintiffs' and class members' claims).

Here, common issues of fact and law include: (1) whether the calls allegedly made by or on behalf of AEP Energy constituted telephone solicitations or telemarketing, (2) whether the numbers called were attributable to cell phones or called at least twice in any 12-month period despite being registered with the National Do Not Call Registry, (3) whether the calls are subject to any common defenses, such as subscribers' prior express invitation or permission, or the called party's prior express consent, or that such calls were made in error notwithstanding certain routine business practices; and (4) damages, including whether the alleged violations were willful or knowing. Because persons in the Settlement Class here all suffered the same injury—

18

unsolicited calls allegedly made by or on behalf of AEP Energy—and are generally subject to the same defenses, commonality is satisfied.

c.      *Plaintiff's Claims Are Typical of the Settlement Class.*

Typicality exists where the claim involves the same "event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." *Parker v. Risk Mgmt. Alts., Inc*., 206 F.R.D. 211, 212 (N.D. Ill. 2002). Here, Plaintiff's claims are based on the same calls allegedly made by or on behalf of AEP Energy in alleged violation of the TCPA as the other Settlement Class Members. Because Plaintiff's claims arise from the same course of conduct, typicality is satisfied.

d.      *Plaintiff and His Counsel Are Adequate Representatives.*

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, (1) the representative cannot have interests antagonistic to the class; (2) the representative must have a sufficient interest in the outcome of the litigation; and (3) counsel for the representative must have appropriate experience, qualifications, and competency. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

Here, Plaintiff has no interests that are antagonistic to or in conflict with persons in the Settlement Class he seeks to represent, and has a substantial interest in the outcome of this action, since Plaintiff received the same allegedly unlawful calls that other persons in the Settlement Class received. *See Phipps v. Sheriff of Cook Cnty.*, 249 F.R.D. 298, 301 (N.D. Ill. 2008) ("The adequacy requirement is not met if the class representative has interests that are antagonistic to or in conflict with those of class members.") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002)). In addition, putative Class Counsel are active practitioners with substantial experience in consumer and class action litigation, including

19

cases under the TCPA similar to this one.  (Burke Decl. ¶¶ 2-11; McCue Decl. ¶¶ 2-11; Paronich Decl. ¶¶ 2-6.)  The requirements of Rule 23(a), therefore, are satisfied.

> 2. The Rule 23(b)(3) Factors Are Satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  Predominance is satisfied so long as individual issues do not "overwhelm" common issues.  *Id.* (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)).  Common issues predominate here because the central liability question— *i.e.*, whether AEP Energy caused calls to be made in violation of the TCPA—can be established through generalized evidence.  *See Sadowski v. Med1 Online, LLC*, No. 07-2973, 2008 WL 2224892, at *4 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database" and whether sending unsolicited faxes "violated the TCPA" predominated over individualized defenses and damages issues).

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Additionally, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See Butler*, 727 F.3d at 801 (noting that "the more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).  Thus, certification for purposes of settlement is appropriate.

### G.  Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval.  The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than August 14, 2015, and schedule further settlement proceedings pursuant to the schedule set forth below:

| Action | Date |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 20 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | 30 days after Notice Deadline |
| Exclusion/Objection Deadline | 60 days after Notice Deadline |
| Deadline to Submit Claims | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing / Noting Date | No earlier than 100 days following entry of Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

## V.  CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval.  It should, therefore, be approved in all respects.

Dated: April 22, 2015

Respectfully submitted,

PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated

By:    /s/ Alexander H. Burke
        Counsel for Plaintiff and the Putative Settlement Class

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

Anthony Paronich (*pro hac vice*)
BRODERICK LAW, P.C.
125 Summer St., Suite 1030
Boston, MA 02360
Telephone: (508) 221-1510
Facsimile: (617) 830-0327
anthony@broderick-law.com

Matthew P. McCue (*pro hac vice*)
LAW OFFICE OF MATTHEW MCCUE
1 South Ave., Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mmccue@massattorneys.net

*Counsel for Plaintiff and the Putative Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2015, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which will send a notice of electronic filing to

Defendant AEP Energy, Inc.'s following counsel of record.

David C. Layden
Jason M. Bradford
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60610
dlayden@jenner.com
jbradford@jenner.com

        /s/ Alexander H. Burke
Counsel for Plaintiff

23